**Carole J. SOUTHERLAND, Plaintiff–Appellant,**

v.

**HARDAWAY MANAGEMENT COMPANY, INC., Defendant–Appellee.**

No. 93–6513.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 4, 1994.

Decided Nov. 29, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 12, 1995.

Norman E. Harned and Joy D. Denton (briefed), Harned, Anderson & Bachert, Bowling Green, KY, for plaintiff-appellant.

John David Cole (briefed), Matthew J. Baker, and Douglas W. Gott, Cole, Minton & Moore, Bowling Green, KY, for defendant-appellee.

Before: LIVELY, JONES, and SILER, Circuit Judges.

LIVELY, Circuit Judge.

The federal question presented by this appeal is what Kentucky statute of limitations applies to claims brought under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988). The district court also decided one state law claim and dismissed another without prejudice.

The plaintiff-appellant, Carole J. Southerland, a former employee of the defendant, Hardaway Management Company, Inc. (Hardaway), appeals from summary judgment in favor of Hardaway resulting in dismissal of her action. The district court held that the plaintiff's federal claim is barred by Kentucky's one year statute of limitations applicable to actions for personal injury and that the plaintiff failed to establish an issue in her state claim for wrongful discharge in retaliation for pursuing a claim under Kentucky's Workers' Compensation Act.

The parties waived oral argument, and the appeal was submitted for decision on the briefs and district court record.

## I.

The defendant Hardaway manages rental properties in Morgantown, Kentucky. The plaintiff worked at one of these properties, the Oak Hill Apartments. Initially a part-time employee and later an assistant manager, Ms. Southerland became the complex's manager when Hardaway purchased the Oak Hill Apartments on December 1, 1984. According to Hardaway, Ms. Southerland's managerial responsibilities included office work, collecting rent, maintaining and repairing the apartment buildings' grounds and commons rooms and supervising the maintenance staff. Ms. Southerland differs, and contends that she performed the more physical aspects of her job as extra duties. In her own words, she did this "simply because she liked it and wanted to." She asserts in her brief that statements from other Hardaway employees verify the voluntary nature of these activities.

On October 29, 1988, Ms. Southerland suffered a work-related back injury while installing carpet in her office at the Oak Hill Apartments. She continued to work until November 4, 1988, when her treating physician, Dr. Craig Beard, ordered her to stop. Thereafter, Hardaway terminated the plaintiff's employment. The parties dispute exactly when this termination occurred. Hardaway maintains that Dean Carter, Hardaway's vice president, terminated Ms. Southerland on January 27, 1989—the day the plaintiff told Ms. Carter she was ready to return to work. Ms. Southerland argues that Hardaway's business records indicate her termination by the company probably occurred on November 5 or 7, 1988. Nevertheless, the district court found that neither the date of the injury, October 29, 1988, nor the date of termination, January 27, 1989, was in dispute. (Summary Judgment Order, App. at 20).

On January 3, 1989, Dr. Beard gave the plaintiff a release to return to work, with restrictions against repetitive bending at the waist and lifting more than thirty pounds. On January 27, 1989, Ms. Southerland told Hardaway Vice President Dean Carter about Dr. Beard's restrictions, and Ms. Carter informed the plaintiff that she was terminated. Nearly a year later, Ms. Southerland filed a worker's compensation claim, which she eventually settled for a 28.5% occupational disability, commuted to a lump sum of $15,000.

## II.

Ms. Southerland filed this action against Hardaway on August 30, 1991, seeking damages and reinstatement to her former job or to a comparable one which she could perform with her physical restrictions. The complaint set forth three causes of action:

(1) Wrongful termination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.[1]

(2) Termination in violation of the Kentucky Equal Opportunities Act, KRS Ch. 207.

(3) Termination in violation of the Kentucky Workers' Compensation Act, KRS Ch. 342.

After discovery, both parties filed motions for summary judgment on all claims. On March 19, 1993, the district court denied the plaintiff's motion but partially granted the defendant's motion, dismissing Ms. Southerland's claim for wrongful discharge in retaliation for seeking benefits under the Kentucky Workers' Compensation Act. Following the steps prescribed by the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), in ruling on the third cause of action the court concluded that "the Plaintiff has not presented probative evidence to satisfy the Court that there is any genuine issue of material fact and, therefore, the Defendant should be granted judgment as a matter of law." The court noted that the plaintiff was an at-will employee and her "bare assertions" of a violation were insufficient.

On October 18, 1993, the district court dismissed the remaining two claims. The

---

1. In 1992, Congress changed the short title of this act to the "Employment Opportunities for Handicapped Individuals Act," Pub.L. 102–569, title I, § 102(p)(34).

court ruled that the federal claim under the Rehabilitation Act was not filed within the applicable period of limitations, and declined to exercise pendent (now "supplemental") jurisdiction over the remaining state law claim pursuant to the Kentucky Equal Opportunities Act. The Rehabilitation Act ruling was based on this court's decision in *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992). The district court construed this court's opinion in *Hall* as holding that a claim under the Rehabilitation Act in which a Kentucky statute of limitations applies must be brought within one year of the claim's accrual. Inasmuch as the plaintiff filed this action more than two and one-half years after the defendant discharged her, the action was time-barred.

## III.

■ The plaintiff appeals both summary judgment rulings and seeks a remand for trial. We review a district court's grant of summary judgment *de novo,* viewing the evidence in the light most favorable to the nonmoving party, here the plaintiff. *EEOC v. University of Detroit,* 904 F.2d 331 (6th Cir.1990); *Pinney Dock & Transp. Co. v. Penn. Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

## IV.

We turn first to the Rehabilitation Act claim.

### A.

■ The plaintiff contends that in *Hall* this court did not settle the issue of which Kentucky statute of limitations applies to actions under the Rehabilitation Act. She argues that *Hall* primarily concerned the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* (1988), and that the Rehabilita-

tion Act claim raised a minor issue. The plaintiff characterizes the court's discussion of time limitations respecting the Rehabilitation Act as "dicta." From this premise the plaintiff goes on to argue that the district court in this case should have applied the Kentucky five year statute of limitations for causes of action created by statute, KRS 413.120.

The *Hall* court followed *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), in stating that Kentucky's one year statute of limitations for personal injury actions, KRS 413.140, establishes the limitations period for claims under the Rehabilitation Act. In *Wilson* the Supreme Court held that because 42 U.S.C. § 1983 contains no statute of limitations, a federal court considering an action brought under that statute must borrow the state statute of limitations that is "most analogous" to apply to the § 1983 claim. *Id.* at 268, 105 S.Ct. at 1942–43. The Court concluded that the most analogous cause of action under state law to § 1983 is a tort action for personal injuries. Thus, federal courts must apply the state statute of limitations for personal injury claims in all § 1983 cases.

The plaintiff contends that the purpose of the Rehabilitation Act is a "far cry" from the purpose of 42 U.S.C. § 1983, the general civil rights act adopted by Congress in 1871. Unlike § 1983, which created no substantive rights but provided a remedy for persons deprived of federally created rights by state officials and agents, section 504 of the Rehabilitation Act, 29 U.S.C. § 794,[2] created a specific right—the right of handicapped persons to be free of discrimination under any federally funded program.

The Court pointed out in *Wilson* that because of its very nature, providing as it does a "uniquely federal remedy," § 1983 can have no close counterpart in state statutes. *Wilson,* 471 U.S. at 271–72, 105 S.Ct. at 1944–45.

---

2. When Ms. Southerland filed her claim in 1991, the pertinent portion of section 504 read:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Minor linguistic changes were made in 1992. Pub.L. 102–569, § 102(p)(32).

The plaintiff asserts that section 504, on the other hand, can and does have state statutory counterparts. Extending this reasoning, the plaintiff argues that the Kentucky Equal Opportunities Act, KRS Ch. 207, forbids discrimination against persons with disabilities and is thus closely analogous in purpose to the Rehabilitation Act. Since Kentucky courts have held that the five year statute of limitations is applicable to claims under the Equal Opportunities Act, the district court should have applied that statute in the present case.

## B.

The defendant responds that the district court and this court are bound by *Hall*, and the *Hall* court unequivocally held that Kentucky's one year statute of limitations for personal injury actions governs cases brought under section 504 of the Rehabilitation Act. While the court consumed less space in deciding the Rehabilitation Act issue, that was because the issue of what limitations period to apply under the Education of the Handicapped Act posed "[a] more challenging question." *Hall*, 941 F.2d at 408. Nevertheless, at the beginning of its discussion of the limitations period applicable to claims for violation of section 504, the court stated that such a claim was one "that had to be brought within one year of its accrual." *Id.* at 407. The court buttressed this holding by declaring the Rehabilitation Act to be a civil rights statute that is closely analogous to § 1983. At this point the *Hall* court reasoned that *Wilson* "strongly suggests" that the proper statute of limitations for a Rehabilitation Act claim is the one year period prescribed for personal injury actions. *Id.* at 408.

The defendant finds the plaintiff's characterization of this language as dicta mistaken, given the clear language that preceded it in the opinion and the fact that the court of appeals affirmed the district court's dismissal of Hall's action.

## C.

Our decision in *Hall* is dispositive of the statute of limitations issue in the present case. The *Hall* court followed other courts that have found section 504 of the Rehabilitation Act closely analogous to 42 U.S.C. § 1983. Although section 504 pinpoints a specific type of discrimination as opposed to providing a remedy for a broad array of discriminatory acts, nevertheless, both are civil rights acts that protect persons in the United States from tortlike injuries.

The plaintiff argues that we should follow cases from other circuits that have not applied state statutes of limitations for personal injury actions to section 504 claims. One such case is *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222 (4th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 77 (1994). The plaintiff in *Wolsky* suffered from a "panic disorder," which affected his powers of concentration. His grades fell because of the side effects of prescribed medications, and he was ultimately dismissed as a student at the defendant medical school. Wolsky sued under section 504 and the defendant appealed from the district court's denial of its motion to dismiss based on a Virginia statute of limitations. The district court held that Virginia's two year statute of limitations for personal injuries applied to the claim. The plaintiff filed suit between one and two years after his dismissal.

The court of appeals reversed, finding that a one year limitations period applied. *Wilson v. Garcia* did not require a different result, the court reasoned, because Virginia has a statute that is modeled after and practically identical to the federal Rehabilitation Act, the Virginia Rights of Persons with Disabilities Act. VA.CODE ANN. § 51.5–40 *et seq.* Unlike § 1983 and the Rehabilitation Act, the Virginia statute contains its own statute of limitations requiring suit to be commenced within one year. Clearly, the court found, under these circumstances the most analogous cause of action for determining the applicable statute of limitations was the one included within the state statute modeled after the Rehabilitation Act.

In the course of its opinion the court of appeals distinguished *Hall* and other decisions that applied statutes of limitations for personal injury actions to determine the

timeliness of suits under the Rehabilitation Act. The *Wolsky* court found that Kentucky had no statute modeled after the Rehabilitation Act and containing a statute of limitations different from that applicable to personal injury actions. Thus, although the *Wolsky* court reached a different conclusion, it agreed with the reasoning and result in *Hall.*

■ We agree with the *Wolsky* court's view of our decision in *Hall.* The Kentucky Equal Opportunities Act is not modeled on the federal Rehabilitation Act. The Kentucky act only prohibits discriminatory employment practices, whereas the Rehabilitation Act is much broader. The federal statute prohibits discrimination "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). In a suit under the Rehabilitation Act, the plaintiff need not be an employee, nor must the defendant be an employer. Inasmuch as the Kentucky Equal Opportunities Act is addressed to employers ("No employer shall fail or refuse to hire, discharge or discriminate against any handicapped individual...." KRS 207.150) it more nearly resembles Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e—2000e–17 (1988), than the Rehabilitation Act of 1973. Further, the Kentucky statute does not contain its own statute of limitations.

A number of other courts of appeals have applied state statutes of limitations governing personal injury actions in cases brought under section 504. See, *e.g., Baker v. Board of Regents of State of Kan.,* 991 F.2d 628, 631 (quoting *Hall*) (10th Cir.1993); *Bush v. Commonwealth Edison Co.,* 990 F.2d 928 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994); *Hickey v. Irving Indep. Sch. Dist.,* 976 F.2d 980 (5th Cir.1992); *Morse v. University of Vt.,* 973 F.2d 122 (2d Cir.1992).

Although it prohibits a particular type of discrimination rather than prohibiting discrimination generally as in § 1983, section 504 of the Rehabilitation Act also "confer[s] a general remedy for injuries to personal rights." *Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948. The district court did not err in dismissing the plaintiff's Rehabilitation Act claim.

## V.

### A.

The plaintiff contends that the district court erred in granting summary judgment for the defendant on her claim that Hardaway unlawfully discharged her in retaliation for pursuing her rights under the Workers' Compensation Act. She makes two arguments: (1) that there were genuine issues of material fact with respect to this claim; and (2) that the district court's reliance on her status as an at-will employee misconstrued controlling law.

According to Ms. Southerland, the evidence clearly demonstrates that there was no other reason for her termination but the fact she had pursued a workers' compensation claim. She points to the fact that she was terminated immediately after informing her supervisor, Ms. Carter, of the restrictions her doctor placed on her activities. Ms. Carter testified in her deposition that the plaintiff was terminated because she was no longer able to perform the duties of her job. Based on this evidence, the plaintiff argues that the notation in Hardaway's personnel records that she was terminated for "lack of work—services not needed" was pretextual.

As to the second argument, the plaintiff contends that the Kentucky Supreme Court held in *Firestone Textile Co. Div. v. Meadows,* 666 S.W.2d 730 (Ky.1983), that there is an exception to Kentucky's rule that an at-will employee may be discharged for good or bad cause, or no cause at all, when the discharge violates a clearly established public policy based on constitutional or statutory provisions.

### B.

The defendant responds that the plaintiff did not file a claim under the Workers' Compensation Act until January 5, 1990, nearly a full year after her discharge on January 27, 1989. According to Hardaway, there is absolutely no evidence that Ms. Southerland was

terminated for pursuing her workers' compensation rights. The record is clear, the defendant argues, that the restrictions on the plaintiff's physical activities rendered her unable to perform the duties assigned to the manager of the Oak Hill Apartments. Hardaway maintains that the notation "lack of work" refers to the fact that Ms. Southerland could no longer perform all the duties required of her position. Because of the doctor's restrictions, Hardaway had no work for her. The person who was hired temporarily to replace Ms. Southerland immediately after her injury was given the job permanently when Ms. Southerland could no longer perform the duties.

### C.

The statutory provision relied upon by the plaintiff in her retaliation claim states: "No employee shall be harassed, coerced, discharged or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this [the Workers' Compensation] chapter." KRS 342.197(1). This provision has been construed to forbid retaliation for filing *or* pursuing a workers' compensation claim. *Overnite Transp. Co. v. Gaddis,* 793 S.W.2d 129, 132 (Ky.App.1990).

■ In order for an employee to establish a claim for wrongful termination in retaliation for pursuing a workers' compensation claim, she must prove that the workers' compensation claim was "a substantial and motivating factor but for which the employee would not have been discharged." *First Property Management Corp. v. Zarebidaki,* 867 S.W.2d 185, 188 (Ky.1994). There is no requirement that "a formal claim" be filed. A claim is established if the plaintiff proves she "intended to file and pursue a lawful worker's compensation claim." *Id.* at 189.

■ We agree with the district court that Ms. Southerland's documentary and deposition evidence do not establish the elements of a retaliation claim. There is no indication that any intent to pursue a workers' compensation claim existed at the time of the plaintiff's discharge, or that such a course of action was discussed. To the contrary, she was seeking an immediate return to her previous job as manager, claiming that she was able to perform all the required duties of the job. Only after she was denied reinstatement did the plaintiff turn to the Workers' Compensation Act for relief. The fact remains that Ms. Southerland was injured while performing work that she later claimed was not required by her position. We believe the evidence supports the defendant's assertion that the plaintiff was discharged solely because of her inability to perform her job. In fact, Ms. Carter testified that Ms. Southerland would have been working at her old job at the time of the Carter deposition if she could have returned to work with a full release. We conclude that the plaintiff's responses to the defendant's motion for summary judgment provide no basis upon which a "rational trier of fact" could find that a "genuine issue for trial" exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, Hardaway was entitled to judgment on this issue as a matter of law. FED.R.CIV.P. 56(c).

■ We do not view the district court's reference to Ms. Southerland's status as an at-will employee as holding that such an employee has no cause of action on a claim of retaliation for pursuing workers' compensation benefits. Rather, the district court appears to have recognized this exception to nonliability for discharging an at-will employee. The court merely pointed out that because the plaintiff was an at-will employee she could prevail only by showing that she was discharged in violation of KRS 342.197. Absent such a showing she could be discharged for any cause or no cause at all.

### VI.

■ The magistrate judge who tried this case pursuant to 28 U.S.C. § 636(c) followed the unusual course of deciding one supplemental state law claim on the merits and dismissing the other such claim without prejudice, exercising his discretion to decline jurisdiction over a supplemental state claim based on no independent jurisdictional foundation. See *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although this approach

was unusual, we find no abuse of discretion and affirm summary judgment on the state retaliatory discharge claim as well as dismissal without prejudice of the claim made under the Kentucky Equal Opportunities Act.

The judgment of the district court is **AFFIRMED**.

NATHANIEL R. JONES, Circuit Judge, concurring in parts I–III, V, and VI, and concurring in result only in part IV.

Southerland claims that she was wrongfully terminated in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504 of the Rehabilitation Act was enacted as a general civil rights provision "to prevent discrimination against all handicapped individuals ... in employment, housing, transportation, education, health services, or any other Federally-aided programs." S.Rep. No. 1297, 93d Cong., 2d Sess. 38, *reprinted in* 1974 U.S.C.C.A.N. 6373, 6388. In pertinent part, the statute states that "[n]o otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (Supp. III 1992).

The district court granted summary judgment to Hardaway on Southerland's Rehabilitation Act claim because it found her claim to be barred by the statute of limitations. J.A. at 23. The court found this circuit's decision in *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992), to be directly on point. In *Hall*, a blind Kentucky resident sued a school district for violating section 504 of the Rehabilitation Act. *Id.* at 405. The court determined that the plaintiff's claim was barred by the statute of limitations since it was not brought within one year of its accrual. *Id.* at 407. The court explained its rationale as follows:

> The Rehabilitation Act has no built-in statute of limitations. In this, as in other respects, it resembles the civil rights legis-

lation codified at 42 U.S.C. § 1983. Federal law normally fills such gaps by importing a limitations period determined by reference to the most closely analogous statute of limitations of the state in which the claim arose. See *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), where it was held that a claim under § 1983 must be brought within the period prescribed by state law for personal injury actions, personal injury actions being most closely analogous to civil rights actions.

> Section 504 of the Rehabilitation Act is a "civil rights statute ... closely analogous to section 1983." *Alexopulos v. San Francisco Unified School District*, 817 F.2d 551, 554 (9th Cir.1987). *Wilson v. Garcia* thus strongly suggests that if Kentucky law is to provide a limitations period for the plaintiff's Rehabilitation Act claim, it is the one year period prescribed by Ky.Rev. Stat. § 413.140(1)(a) for actions based on injury to the person.

*Hall*, 941 F.2d at 407–08. Faced with a Kentucky resident, who filed a claim under the Rehabilitation Act on August 30, 1991, and whose cause of action allegedly accrued, at the latest, on Jan. 27, 1989, the district court applied the binding precedent of *Hall* and held that Southerland's claim was time barred.

Because we are bound by this authority, I see no viable option but to affirm the district court's grant of summary judgment to Hardaway on this issue.

Nonetheless, after thorough analysis, I am convinced that the *Hall* court's reasoning on this issue was errant. The *Hall* court borrowed the analysis of the Ninth Circuit in *Alexopulos v. San Francisco Unified School District*, 817 F.2d 551, 554 (9th Cir.1987), without closely analyzing what the Supreme Court said in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Simplified, the serial reasoning of the Sixth and Ninth Circuits proceeds as follows: (1) Based on Supreme Court precedent involving civil rights statutes and congressional direction in 42 U.S.C. § 1988(a), when a federal cause of action lacks a statute of limitations, the set-

258

tled practice has been to adopt the most appropriate or most analogous statute of limitations of the state in which the claim arose. *See Wilson*, 471 U.S. at 266–67, 105 S.Ct. at 1941–42. (2) The Rehabilitation Act is a federal civil rights law. (3) In *Wilson*, the Court decided that 42 U.S.C. § 1983 claims were most like personal injury tort actions; thus it held that all section 1983 claims had to be brought within the period prescribed by each state for personal injury actions. 471 U.S. at 275–76, 105 S.Ct. at 1946–47. (4) As a civil rights statute, the Rehabilitation Act is closely analogous to section 1983. (5) Therefore, the state statute of limitations applicable to personal injury actions should also apply to Rehabilitation Act claims.

The *Hall* court's reasoning error occurs in the analogy used in step four. Although it is true that the Rehabilitation Act and section 1983 are both civil rights statutes, nothing indicates that the *Wilson* Court intended all federal civil rights statutes that lack a statute of limitations to be governed by the state time period for personal injury actions. The *Wilson* Court came to the conclusion that the time period applicable to personal injury actions should be applicable to section 1983 claims because it determined, after exhaustive analysis, that section 1983 claims were "most analogous" to personal injury actions. Thus, I submit that step one in the reasoning process noted above must *inform* and *control* the adoption of a state statute of limitations for Rehabilitation Act claims. Analogizing all federal civil rights statutes to section 1983 claims for purposes of finding a statute of limitations may expedite the analysis, but it directly conflicts with *Wilson's* primary mandate to find the most analogous state statute for the federal cause of action under consideration.

This error has only been compounded since it originated because other circuits have adopted the same reasoning. See *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 983 (5th Cir.1992); *Morse v. University of Vermont*, 973 F.2d 122, 127 (2d Cir.1992). Recently, however, the Fourth Circuit broke ranks in *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222 (4th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 881, 127

L.Ed.2d 77 (1994), and it presented a cohesive analysis that was congruent with the primary direction of *Wilson*.

Wolsky filed suit against the Medical College claiming discrimination based upon his disability under section 504 of the Rehabilitation Act. *Id.* at 222. The district court had followed the precedent of other circuits in determining that the statute of limitations for state personal injury actions should apply to Rehabilitation Act claims. *Id.* at 224. The Fourth Circuit, following *Wilson*, began its analysis by recognizing that the central issue was the selection of "the most appropriate" or "the most analogous" state statute of limitations to apply. *Id.* at 223. It noted that the *Wilson* Court held that section 1983 claims were most closely analogous to personal injury actions. *Id.* Moreover, the Court had extended this same reasoning to section 1981 claims in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987). *Id.* Nonetheless, the Fourth Circuit refused to analogize the Rehabilitation Act to section 1983 or section 1981 claims because *Wilson* directed the courts to look to the most appropriate or analogous state statute and its corresponding statute of limitations, not the most analogous federal statute. *Id.* at 224. After examining Virginia state law, the court determined that the Virginia Rights of Persons with Disabilities Act was the most analogous statute to the Rehabilitation Act, and thus the court applied its statute of limitations to Wolsky's claim. *Id.* at 225.

Southerland argues that if the admonition of *Wilson* was followed in this case, then analysis of Kentucky law would reveal that the Kentucky Equal Opportunities Act, Ky. Rev.Stat. Ann. § 207.150 (Baldwin 1993), is the most analogous state statute to the Rehabilitation Act. I agree.

In pertinent part, the Equal Opportunities Act states the following:

(1) No employer shall fail or refuse to hire, discharge or discriminate against any handicapped individual with respect to wages, rates of pay, hours, or other terms and conditions of employment because of the person's physical handicap unless the handicap restricts the individual's ability to

engage in the particular job or occupation for which he or she is eligible....

*Id.* Although the Federal Rehabilitation Act is broader in its scope of protection, the Kentucky Equal Opportunities Act, like the Rehabilitation Act helps to prevent employers from discriminating against handicapped individuals in employment because of their handicap. Clearly, under Kentucky law, the Kentucky Equal Opportunities Act is the most analogous state statute to the Federal Rehabilitation Act.

Contrary to this assertion, the majority in this case adopts the reasoning of the *Hall* court because "[t]he Kentucky Equal Opportunities Act is not *modeled* on the [F]ederal Rehabilitation Act." *See* Op. at 255 (emphasis added). In this determination, the majority relied on a portion of the Fourth Circuit's analysis in *Wolsky. Id.* The Fourth Circuit was aided in its effort to find the most analogous state statute because the Virginia Rights of Persons with Disabilities Act was clearly modeled on the Rehabilitation Act. 1 F.3d at 224. But this does not mean that the most analogous state statute must be *modeled* on the Rehabilitation Act or that its scope of protection must be as broad as the federal statute. *Wilson* only directed the courts to look to the most appropriate or analogous state statute and its corresponding statute of limitations. It did not mandate that in the absence of a state statute *modeled* upon the federal provision, courts should default to the state statute of limitations for personal injury actions.

Again relying on *Wolsky,* the majority in this case further refused to find that the Kentucky Equal Opportunities Act was the most analogous state statute because "the Kentucky statute [did] not contain its own statute of limitations." Op. at 255. Although the Virginia Rights of Persons with Disabilities Act happened to contain its own statute of limitations, see *Wolsky,* 1 F.3d at 224, *Wilson* does not mandate that the most analogous state statute must contain its own statute of limitations before it can be applied to a Rehabilitation Act claim. Rather, *Wilson* simply directs the courts to select the most appropriate or most analogous state

statute of limitations. 471 U.S. at 267–68, 275, 105 S.Ct. at 1942–43, 1946.

A brief perusal of Kentucky law indicates that Kentucky courts have consistently held that the applicable statute of limitations for statutes of a civil rights nature is the five-year period of Ky.Rev.Stat. Ann. § 411.130(2). *See Clifton v. Midway College,* 702 S.W.2d 835, 837 (Ky.1985); *Pike v. Harold (Chubby) Baird Gate Co.,* 705 S.W.2d 947, 948 (Ky.Ct.App.1986) (claiming wrongful termination in violation of section 342.197 of Kentucky Revised Statutes). Indeed, one court has specifically addressed the applicable statute of limitations for claims brought pursuant to the Kentucky Equal Opportunities Act. *Day v. Alcan Aluminum Corp.,* 675 F.Supp. 1508, 1511 (W.D.Ky.1987). The *Day* court held that the appropriate period is five years as prescribed in Ky.Rev.Stat. Ann. § 411.130(2) (Baldwin 1993).

Based on this analysis, I agree with Southerland that she should have five years to file her Federal Rehabilitation Act claim. Southerland Br. at 27–28. Thus, her claim would not be time barred. Nonetheless, our hands are tied by the precedent in *Hall.*