KING COAL COMPANY, Appellant,

v.

Larry E. OVERTON; Robert L. Whittaker, Acting Director of Special Fund; Dwight T. Lovan, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 94–CA–002328–WC.

Court of Appeals of Kentucky.

Sept. 22, 1995.

James G. Fogle, Judson F. Devlin, Louisville, for appellant.

Angeline B. Golden, Louisville, for appellee, Special Fund.

John C. Carter, Harlan, for appellee, Larry E. Overton.

Before HOWERTON, JOHNSON and SCHRODER, JJ.

SCHRODER, Judge:

■ This petition for review from a decision by the Workers' Compensation Board (Board) raises the question of whether, based on KRS 342.197, which makes it illegal for an employer to discriminate against a worker because he has pneumoconiosis, and the Americans with Disabilities Act, an employer is entitled to reopen a total disability award based on pneumoconiosis, when the primary reason for the granting of a total disability award no longer exists. Having reviewed the record, we agree with the Board that reopening is not proper in these circumstances.

Larry Overton (Overton) had been a coal miner for 15 years when he filed a claim in 1981 with the former Board for benefits based on his having coal workers' pneumoconiosis. Under the law at that time, the granting of benefits for pneumoconiosis was governed by KRS 342.316 [1]. The former Board noted that Overton's only job experience was as a coal miner; he had a seventh grade education; three physicians (William H. Anderson, R. Matheny, and Robert Pen-

man) diagnosed pneumoconiosis while two others (Ballard Wright and Benjamin Felson) did not; and a vocational witness testified that Overton's chances of employment and rehabilitation in his area were limited. It concluded that Overton had a "compensible [sic] form of coal workers' pneumoconiosis, and that his pulmonary functional disability is attributable to his approximately 15 years of exposure in and around the coal mines."

In 1984, King Coal Company (King Coal) filed a motion to reopen pursuant to KRS 342.125, but the former Board declined to reduce Overton's benefits. On August 14, 1989, King Coal again attempted to reopen the award, this time based on the enactment of KRS 342.197—the same argument before us. An ALJ denied the motion based on the fact that KRS 342.197 became effective on October 26, 1987 and that retroactive application was prohibited by KRS 446.080. The Board affirmed the denial, agreeing that King Coal had not supported its motion with medical evidence exhibiting a change in occupational disability as is needed to establish a prima facie case for reopening. The Board also stated, with one member dissenting:

[ ] If an employer can support a motion to reopen on the grounds that a claimant is no longer unemployable in light of KRS 342.197 and supports said motion with medical evidence, then the ALJ must consider whether or not a prima facie case has been made based on the medical evidence.

King Coal then had Overton examined again by Dr. Anderson, and his conclusions were the same as in 1981: he found category one pneumoconiosis with no pulmonary impairment. King Coal also procured a vocational report from Luca Conte. He opined that based on KRS 342.197, the ADA, and Dr. Anderson's report, Overton was capable of performing a number of work activities in and outside the mines. Yet another motion to reopen was filed.

ALJ Lovan overruled the motion, finding that Overton's physical condition had not changed; Dr. Anderson's opinion remained

---

1. Benefits based on the occupational disease of coal workers' pneumoconiosis are now governed by the provisions of KRS 342.732.

the same; the fact that there were several jobs Overton could perform in the area where he lives is not in itself a sufficient basis for reopening; and that Dr. Conte's opinion would have been the same in 1981 if he had testified then. He concluded:

Since this is a pre–1987 last exposure, the sole issue is extent and duration of occupational disability. In our opinion, these two provisions are clearly anti-discriminatory provisions and are an excellent addition to the law. Unfortunately, they do not constitute in our opinion a change in Plaintiff's occupational disability. They prohibit an employer from discriminating against him, they do not, however, insure the appropriateness of his returning to underground coal mining activities or coal mining activities in general. It is clear from Dr. Anderson's testimony that the risk of progression continues to exist as much today as it did at the time of the original decision in this matter. As best we can determine from the original Opinion and Award, risk of progression coupled with a medical contraindication to continued exposure to hazardous dust was the basis for the then Workers' Compensation Board's decision to find the Plaintiff totally occupationally disabled. However frustrated the Defendant employer may be in the instant action and the fact that if we were reviewing the original claim in this matter we might reach a different conclusion is of no consequence. Our obligation upon considering the evidence is to determine whether the Defendant employer has established that there has been a *change* in Plaintiff's occupational disability. We [sic] conclude that the evidence does not so indicate.

The Board affirmed, noting the medical, lay, and vocational evidence. The Board found King Coal's collateral assault on the 1983 award through the 1987–enacted KRS 342.197 clearly inappropriate. It further concluded:

The award by the "old" Board was based upon Overton's affliction with coal workers' pneumoconiosis alone and not on the presence of any pulmonary impairment. The disease is recognized as an irreversible one. There is no recovery and there is no cure. Avoidance of coal dust is the only stabilizing element available to an ex-coal miner such as Overton. The law required no more in 1983 than substantial evidence of record to support a finding of total disability. In his case, x-ray evidence varied from 1/2 to 2/2 pneumoconiosis. Then, there were no tiers of the disease and pulmonary criteria as was established by the legislature in 1987.... However, KRS 342.197 was not remedial legislation nor intended to be retroactively applied by the employer in the manner attempted here. KRS 446.080; *see, Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446 (1994); *First Property Mgt. Corp. v. Zarebidak[i],* Ky., 867 S.W.2d 185 (199[3] ); *Moore v. Sunstone Energy, Inc.,* Ky., 849 S.W.2d 529 (1993).

■ Our review of the Board's decision is limited to whether it mischaracterized evidence by the ALJ or made an error of law so flagrant as to cause gross injustice. *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685 (1992). We agree with the reasoning of both ALJ Lovan and the Board. Their opinions leave little to expand upon. Accordingly, the decision of· the Workers' Compensation Board is affirmed.

All concur.